AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Verizon Wireless - Account 805-400-8798<br>180 Washington Valley Road<br>Bedminster, New Jersey 07921 | )<br>)<br>)  Case No. 20MJ1244<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ District of \_\_\_\_New Jersey\_\_\_\_ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of Controlled Substances and Conspiracy |

The application is based on these facts:
See Attached Affidavit of Special Agent Roger Carr, Homeland Security Investigations, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Roger Carr, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by \_\_telephone\_\_ *(specify reliable electronic means)*.

Date: March 30, 2020

*Judge's signature*

City and state: San Diego, California          Hon. Andrew G. Schopler, U.S. Magistrate Judge
                                                 *Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Roger Carr, being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for information associated with the phone number 805-400-8798 (the "Account"), including subscriber information, telephone toll data and cell-site geo-location information for the period of August 29, 2019 up to and including October 26, 2019. As set forth below, probable cause exists to believe the Account contains evidence of violations of federal law, namely, importation of controlled substances and conspiracy to import controlled substances, in violation of 21 U.S.C. §§ 952, 960, and 963, as described in Attachment B.

2. The data associated with the account is currently in the possession of Verizon Wireless ("Verizon"), headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921, as described in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies of the information further described in Attachment B. Upon receipt of the information described in Attachment B, government-authorized persons will review the information to locate items described in Attachment B.

3. This affidavit and these applications are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, Verizon provides electronic communication services in the form of cellular and wireless telephone service for the Account. This Court has jurisdiction to issue this warrant because it is "a district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. §§ 2703(c)(1)(A), 2711(3)(A).

**TRAINING AND EXPERIENCE**

4. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since September 2001 (then known as the United States Customs Service) and am an "Investigative or Law Enforcement Officer" of the United States within

the meaning of Title 18, United States Code, Section 2510(7).  I am currently assigned to the HSI Office of the Special Agent in Charge, San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.

6. My training and experience in narcotics enforcement has included narcotics interdiction, the identification of different types of narcotics, including methamphetamine and heroin, and the investigation of persons in possession of narcotics for purposes of sales and transportation.  In addition, I speak with other narcotics investigators regarding the manner in which sellers of narcotics store, transport and sell narcotics.  I also regularly extract and analyze mobile devices and other digital evidence associated with narcotic investigations.

7. In the course of my duties, I have personally participated in and conducted investigations of violations of various State and Federal criminal laws, including those related to narcotics violations. I have arrested or participated in the arrest of persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks.

8. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities.  Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail

messages referring to the arrangements of travel and payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging cell phone applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity.

9. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

10. On October 26, 2019, at approximately 8:40 p.m., Karinna Maury HERNANDEZ and Delilah Yamilett LOPEZ-MORENO applied for permission to enter the United States at the San Ysidro, California, Port of Entry. HERNANDEZ was the driver and LOPEZ-MORENO was the passenger of a black 2007 BMW 750I registered to HERNANDEZ. After a trained human and narcotics detection canine alerted to the vehicle, the vehicle was referred for secondary inspection. In secondary inspection, Customs and Border Protection Officers discovered 12 packages concealed within both rocker panels of the vehicle. The packages weighed approximately 23.24 kilograms (51.12 pounds) in total, which lab reports later confirmed contained 20.771 kilograms of methamphetamine (actual) and 996 grams of heroin. Additionally, Homeland Security Investigations (HSI) Special Agents (SA) found approximately 0.1 grams of a substance that field-tested positive for methamphetamine in LOPEZ-MORENO's bag. LOPEZ-MORENO and HERNANDEZ were placed under arrest and a cellular phone was seized from LOPEZ-MORENO's person. (Agents seized two additional cellular devices that are not the subject

of this warrant from between the driver's seat—where HERNANDEZ sat—and the center console of the vehicle.)

11. Post-arrest, LOPEZ-MORENO was read her *Miranda* rights and elected to give a statement. LOPEZ-MORENO denied knowledge of the drugs in the vehicle as well as the drugs found in her bag. When agents allowed LOPEZ-MORENO to have access to the cell phone that was seized from her person in order to unlock it, she immediately attempted to delete information. LOPEZ-MORENO later bragged to HSI SAs that although she knew a great deal about the current incident, she would not share any information with the agents.

12. On October 28, 2019, Magistrate Judge Barbara Major found probable cause to charge HERNANDEZ and LOPEZ-MORENO with importation of a controlled substance in violation of 21 U.S.C. §§ 952, 960. *United States v. Hernandez*, No. 19-MJ-4755, ECF 1 (S.D. Cal.). On November 20, 2019, a federal grand jury returned a one-count Indictment charging HERNANDEZ and LOPEZ-MORENO with the same. *United States v. Hernandez*, No. 19-CR-4744-JLS (S.D. Cal.).

13. On November 22, 2019, I obtained a search warrant for LOPEZ-MOREENO's cell phone. The cell phone was subjected to a forensic analysis; however, the cell phone, which is associated with the **Account**, was locked with a pin code that prevented agents from obtaining a full and complete extraction from the phone. Agents began using new technology to subject the phone to a "brute-force attack" to bypass the pin. On February 20, 2020, I obtained a second search warrant to allow agents to continue trying to gain access to LOPEZ-MORENO's phone, which remains ongoing.

14. Although agents have not gained complete access to LOPEZ-MORENO's cellular phone, the data extracted from the cellular phone revealed that its phone number is 805-400-8798 and the owner of the phone is "Delilah," which is LOPEZ-MORENO's first name. The phone contained data that tended to demonstrate that the **Account** was used up to and including the day of arrest. Additionally, LOPEZ-MORENO stated during biographical questioning that her phone number was 805-400-8798**,** which is the **Account**.

1  Based on my review of law enforcement databases, the provider for (805) 400-8798 is
2  Verizon.
3     15.   According to Department of Homeland Security records, HERNANDEZ
4  began crossing the US/MX Border by vehicle this year on February 18, 2019, and crossed
5  with LOPEZ-MORENO as early as September 1, 2019. Accordingly, I request per call
6  measurement data (by whatever name the provider uses) for the Account for the following
7  date and time range: August 29, 2019 (three days before LOPEZ-MORENO and
8  HERNANDEZ's September 1, 2019 crossing together), up to and including October 26,
9  2019 (the date of arrest).
10    16.   Based upon my experience investigating narcotics traffickers and the
11 particular investigation in this case, I believe LOPEZ-MORENO, HERNANDEZ, and
12 other co-conspirators were engaged in a conspiracy to smuggle narcotics into the United
13 States from Mexico.  I also believe the co-conspirators, including HERNANDEZ, used
14 cellular phones to communicate and coordinate the importation of narcotics.  I believe the
15 information regarding phone numbers LOPEZ-MORENO was in contact with during the
16 relevant period of time may reveal other accomplices and co-conspirators engaged in
17 narcotics smuggling. Additionally, I believe that historical geolocation data from the
18 Account LOPEZ-MORENO used may identify travel to or locations involved in the
19 importation of methamphetamine, heroin, or other federally controlled substances, such as
20 delivery points, stash houses, or load houses, and may assist in identifying co-conspirators.
21    17.   Based on my training and experience, and my consultation with other law
22 enforcement officers, I am aware that Verizon routinely collects and stores data for the
23 electronic communication accounts to which it and other providers issue telephone
24 numbers.  The data includes: (i) subscribers' contact and billing information; (ii) detailed
25 information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed
26 information concerning subscribers' outgoing direct calls, text message, and SMS
27 messages; and (iv) detailed information concerning cell-site geo-location data.
28    18.   In particular, I know that cell phones connect to a provider's network through

cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

19. In my training and experience, I have learned Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including Cell Site Location Information (CSLI), also known as "tower/face information" or "cell tower/sector records." CSLI data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, CSLI data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

20. I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks. Different providers may use different terminology to describe PCMD. For example, AT&T has referred to the resulting location information as "NELOS" data; Verizon, as "Real Time Tool" or "RTT" data; Sprint, as PCMD; and T-Mobile, as "timing advance" data. This application requests such per call measurement data (by whatever name the provider uses) for the Account for the following date and time range: August 29, 2019 up to and including October 26, 2019.

21. Given these facts, I seek a warrant to search the Account for the record and information in Attachment B.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22. As described above, the United States obtained a search warrant for the cellular phone associated with the Account but has not been able to access the entire phone. I have also subpoenaed and received records associated with the Account from Verizon but such response does not provide all of the data requested by this warrant, namely location data. The United States is unaware at this time of other attempts by the U.S. government to obtain this data by other means.

## CONCLUSION

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

24. Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the Account to be seized, as set forth above and in Section I of Attachment B, will be found in the location described in Attachment A, and will contain evidence of violations of 21 U.S.C. §§ 952, 960, and 963. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent, to order Verizon to search its corporate records for the Account and to order Verizon to deliver the Account listed in Attachment B.

Roger Carr, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  30th  day of  March , 2020.

HON. ANDREW G. SCHOPLER
United States Magistrate Judge

# ATTACHMENT A

## *Item to be Searched*

Verizon Wireless hosts the electronic communication account associated with the telephone number (805) 400-8798 that is the subject of this search warrant and search warrant application ("Account").

Verizon Wireless is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 180 Washington Valley Road, Bedminster, New Jersey 07921.

# ATTACHMENT B

*Items to be Seized*

I. **Service of Warrant**

The officer executing the warrant shall permit the Provider in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. **Items to be provided by the Provider**

Agents shall seize the following records, data, and information covering August 29, 2019 up to and including October 26, 2019 and maintained by the Provider for the subject account identified in Attachment A:

    a. Subscriber information, including:
        i. Names;
        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
        iii. Local and long distance telephone connection records;
        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
        v. Length of service (including start date) and types of service utilized;
        vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
        vii. Other subscriber numbers or identities; and
        viii. Means and source of payment (including any credit card or bank account number) and billing records.
    b. Records and other information about past wire or electronic communications sent or received by the subject account, including:
        i. the date and time of the communication;
        ii. the method of the communication;

     iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; and

     iv. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications;

which are evidence of violations of 21 U.S.C. §§ 952, 960, and 963, importation of methamphetamine and heroin, and conspiracy to commit the same.